**In re Lawrence W. WEIDEL, d/b/ Weidel International & Steeple Hill, and Renee B. Weidel, Debtors.**

**Bankruptcy No. 95–10910C–11G.**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

Jan. 8, 1997.

6. Subsection (b)(3) states that the plan may "provide for the curing or waiving of any default".

Charles M. Ivey, III, Greensboro, NC, for debtors.

H. Arthur Bolick, II, Greensboro, NC, for Harvell's Woodworking Co.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Chief Judge.

This case came before the court on November 5, 1996, for hearing upon Debtors' objection to a proof of claim which was filed on behalf of Harvell's Woodworking Company. Charles M. Ivey, III appeared on behalf of the Debtors and H. Arthur Bolick, II

appeared on behalf of Harvell's Woodworking Company ("Harvell's").

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) which this court may hear and determine.

## BACKGROUND

Harvell's proof of claim was filed on July 10, 1995. On June 17, 1996, the Debtors filed an objection to the Harvell's claim in which the Debtors asserted that they had paid Harvell's and that they were not aware of any further amount owing to Harvell's. The Debtors asserted in their objection that they had repeatedly requested written documentation and an itemization and accounting for the work performed and services rendered by Harvell's and that Harvell's had been unable to provide such information or to substantiate that any further amounts were owed to Harvell's by the Debtors. No response to the objection was filed by Harvell's and on August 19, 1996, an order was entered sustaining the Debtors' objection and disallowing the claim. On August 30, 1996, Harvell's filed a motion for reconsideration requesting that the court set aside the order disallowing the claim on the grounds that neither Harvell's nor its counsel had received notice of the deadline for filing a response to Debtor's objection to the Harvell's claim. On September 23, 1996, following a hearing on September 17, 1996, the court entered an order granting the motion and setting aside the earlier order disallowing the Harvell's claim and directing that a hearing be held on the issues raised by Debtors' objection to the Harvell's claim.

## HARVELL'S PLEA IN BAR

Before proceeding to the merits of the Debtor's objection, the court must first decide whether the Debtor's objection is barred by the doctrine of *res judicata*, as contended by Harvell's. The doctrine of *res judicata* precludes relitigation of matters that were or could have been litigated in an earlier proceeding. *In re Envirodyne Industries, Inc.*, 174 B.R. 986 (Bankr.N.D.Ill. 1994) (citing *Levinson v. United States*, 969 F.2d 260, 262 (7th Cir.), *cert. denied*, 506 U.S. 989, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992)). Furthermore, "the doctrine of *res judicata* applies in the bankruptcy context ... [and] a bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect." *In re Varat Enterprises, Inc.*, 81 F.3d 1310 (4th Cir.1996) (citations omitted). Giving *res judicata* effect to a confirmed plan is further supported by § 1141(a) of the Code, which provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder or general partner is impaired under the plan and whether or not such creditor, equity security holder or general partner has accepted the plan.

The Fourth Circuit Court of Appeals in *Varat* applied the doctrine of *res judicata* in the claims objection context. In *Varat*, the court barred First Union, a secured creditor, from asserting a post-confirmation objection to the plan's treatment of Nelson, Mullins, another secured creditor. In doing so, the court stated:

> Generally, claim preclusion occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Id.* at 1315 (citing *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir.1987)). The *Varat* court

found that the order confirming the plan was a valid, final judgment based on proper jurisdiction, that the confirmation proceeding was noticed in accordance with the mandates of due process, that the parties involved in the dispute had attended and participated in the confirmation proceedings, and concluded that since the plan had been amended specifically to deal with Nelson, Mullins's claim, the order confirming the plan was based, in part, on the transaction at the core of the dispute presented by the First Union objection. The court held that First Union's objection to Nelson, Mullins's claim therefore was barred by *res judicata.*

■ Likewise, in the case now before the court the order of confirmation was a final judgment based on proper jurisdiction. All creditors were notified of the plan and the confirmation hearing. Harvell's participated in the plan confirmation process or had the opportunity to do so. In that regard, Harvell's filed a claim, but chose not to object to the plan or its treatment under the plan. Finally, in confirming the plan, the court considered the plan's treatment of all claims, secured, priority unsecured and general unsecured alike. Thus, confirmation was based on the plan's treatment of claims, one of which belonged to Harvell's. Therefore, under the factors laid out in *Varat,* both the Debtor and Harvell's are bound by the terms of the confirmed plan. Were this the end of the inquiry, the Debtor would not be able to assert a post-confirmation objection to Harvell's claim.

■ However, two further considerations must be taken into account before deciding whether the Debtor's objection is barred by *res judicata.* First, several courts applying the doctrine of *res judicata* to post-confirmation proceedings have added a limitation by holding that the plan is *res judicata* only "with regard to creditor's claims *specifically treated* under the plan...." *In re DiBerto,* 171 B.R. 461, 473 (Bankr.D.N.H.1994) (emphasis added). *DiBerto* and cases like it imply that *res judicata* does not bar creditors who are generally treated under the

plan from bringing post-confirmation challenges to their treatment under the plan. Under this rationale a debtor could avoid the *res judicata* effect of confirmation as to certain creditors by treating them generally rather than specifically addressing their claims in the plan. This approach is not supported by the Code or by the weight of the case law. Section 1141(a) states, without qualification, that "any creditor" is bound by the plan, whether or not the creditor is impaired by the plan or has accepted the plan. Furthermore, case law is rife with examples of courts giving *res judicata* effect to confirmed plans, despite the fact that creditors are treated generally under the plan. *See In re Bancroft Cap Co.,* 182 B.R. 538 (Bankr. E.D.Ark.1995) (*res judicata* barred debtor from asserting a postpetition objection to the claim of a general unsecured creditor); *In re Melvin,* 186 B.R. 276 (Bankr.M.D.Fla.1994) (judgment creditor bound by its treatment as a general unsecured creditor under plan); *In re Envirodyne Industries, Inc.,* 183 B.R. 812 (Bankr.N.D.Ill.1995) (debtor timely asserted a counterclaim as an objection to a claim of a general unsecured creditor); *In re Wrenn Insurance Agency of Missouri, Inc.,* 178 B.R. 792 (Bankr.W.D.Mo.1995) (creditor treated as unsecured creditor with a claim over $500 could not pursue post-confirmation relitigation challenging treatment of claim); *In re Outdoor Sports Headquarters, Inc.,* 168 B.R. 177, 182 (Bankr.S.D.Ohio 1994) (several members of class of unsecured creditors asserted post-confirmation objection to another member's claim); *In re Mickey's Enterprises, Inc.,* 165 B.R. 188 (Bankr.W.D.Tex.1994). Therefore, this court concludes that Harvell's generalized treatment under the plan as a member of the class of general unsecured creditors does not preclude a finding that the plan is *res judicata* as to Harvell's claim.

■ The second consideration that this court must take into account is the fact that the Debtor's plan expressly reserves the right to assert post-confirmation objections to claims. The Code and the Rules do not establish a bar date for filing objections to claims. Nevertheless, the Fourth Circuit, in

*Varat*, ruled that under the facts present in that case objections to claims had to be filed before confirmation of the plan. However, the Fourth Circuit did not address whether this time period for objecting to claims may be extended by the terms of the plan. Debtor's plan in the present case provides as follows:

> Any party in interest may file an objection to any claim within 60 days after confirmation of the plan of reorganization. Objections not filed by parties in interest within such time shall be deemed waived unless the period within which to file objections to claims is extended by order of this court.

Debtor's Modified Plan of Reorganization § 9.1. Debtor's plan was confirmed on May 28, 1996. The Debtors filed their objection to Harvell's claim on June 17, 1996. Therefore, Debtor's objection was after confirmation of the plan and hence outside the time period applied in *Varat*, but inside the time period provided under the plan. This court must decide whether to give effect to the Debtor's reservation of the right to object post-confirmation.

The cases cited below, while not unanimous as to how the right may be reserved, recognize the right of a debtor to put a provision in the plan extending the time for filing objections to claims. Several courts have held that to reserve a right to litigate a claim after confirmation, the debtor must do so by explicitly reserving the right as to that specific claim, and not by a general provision in the plan allowing for an objection to any claim. *In re Rainbow Trust*, 200 B.R. 785 (Bankr.D.Vt.1996) (holding that reservation of right to object to claims did not preclude application of *res judicata*); *In re Kelley*, 199 B.R. 698 (9th Cir. BAP 1996) (finding a blanket reservation insufficient to prevent the application of *res judicata* to a specific action); *In re Hooker Investments, Inc.*, 162 B.R. 426 (Bankr.S.D.N.Y.1993) (allowing a challenge to a claim because the right to challenge that claim was specifically reserved); *In re Mickey's Enterprises, Inc.*, 165 B.R. 188 (Bankr.W.D.Tex.1994)(holding that debtor's general retention of the right to pursue § 547 actions did not the preclude creditor's assertion of *res judicata* when debtor brought a post-confirmation preference action). The rationale of these cases is illustrated by the decision in *In re Mickey's Enterprises, Inc., supra*. In that case, the court found that the creditor did not file a proof of claim because no claims or potential claims by the debtor against the creditor were disclosed in the plan or the disclosure statement. Then, after the claims bar date had run, the debtor filed a preference action against the creditor. The court found that the debtor knew about the preference action long before the confirmation hearing or the filing of the disclosure statement. The court concluded that the creditor would have filed a claim if it had known that the debtor intended to assert a preference action against it. The court therefore found that the debtor's disclosure statement was inadequate and ruled that it would be inequitable to allow the debtor to pursue the preference action. The court stated:

> And, clearly, any bankruptcy litigation that the plan proponent is planning on bringing against a known creditor with known claims who has a right to be involved in the confirmation process and who can still timely file claims should be fully disclosed.

*Mickey's Enterprises*, 165 B.R. at 194.

Several reasons exist for departing from the holding of *Mickey's Enterprises* and like cases. First, the clear language of § 1141(a) provides that the "provisions of a confirmed plan bind ... any creditor ..." Section 1141(a) essentially "create(s) and establish[es] the new relationships that a debtor has with its creditors after filing for bankruptcy relief." *In re Outdoor Sports Headquarters, Inc.*, 168 B.R. 177, 182 (Bankr. S.D.Ohio 1994). "[A] confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditor alike." *Varat*, 81 F.3d at 1317. The creditors can examine these "new rights" before entering into the "new contract" represented by the plan, and may object to the plan if they wish. Harvell's had the opportunity to object to the plan in the present case and

could have objected to the debtor's reservation of the right to object to claims following confirmation. Harvell's did not object, and thus under § 1141(a) Harvell's should be bound by the new contractual terms, including the provision setting the time for objecting to claims as being 60 days after confirmation.

Second, the confirmation process is expedited by allowing a general reservation of rights to serve as notice to creditors that their claims may be challenged. To require otherwise would mean that the debtor would have to expend the effort and time required to evaluate all claims filed in this case before the debtor could start the confirmation process. The debtor would have to examine every aspect of every claim and decide whether to pursue an objection before confirmation, reserve the specific right to object after confirmation, or abandon any challenge to the claim. In most chapter 11 cases, this process would be lengthy, would seriously delay the proposal of a plan as well as confirmation, and would eat into the debtor's exclusivity period. However, a general reservation of a right to contest claims puts all parties on notice that a creditor's claim may be challenged. The time between the filing of a case and confirmation will be shortened by giving effect to general reservations of rights. Creditors may vote and object with this provision in mind. If the creditor finds the provision objectionable, it may object and force the issue regarding its claim.

Third, there is ample support in the cases for enforcing a plan provision generally reserving the right to object to claims following confirmation and extending the time for doing so. *In re Outdoor Sports Headquarters, Inc.,* 168 B.R. 177 (Bankr.S.D.Ohio 1994) (creditor bound by provision allowing objections within 30 days of confirmation); *In re Bancroft Cap Co.,* 182 B.R. 538 (Bankr. E.D.Ark.1995) (debtor bound by provision allowing objections within 90 days of confirmation); *In re Holly's,* 172 B.R. 545 (Bankr. W.D.Mich.1994), *aff'd,* 178 B.R. 711 (W.D.Mich.1995) (debtor barred by 120 day provision allowing for objections to claims);

*In re Moussa,* 95 B.R. 449 (Bankr.N.D.Tex. 1989) (debtor bound by provision allowing creditors to object to discharge within 60 days of effective date of plan); *See also In re Envirodyne,* 174 B.R. 986 (Bankr.N.D.Ill. 1994) (allowing debtor to pursue preference action because the right was generally reserved in the plan). The sound rationale expressed by these courts is that under § 1141(a) debtors and creditors are bound by the terms of the plan and a general reservation of the right to object is a valid and binding plan provision. *Moussa,* 95 B.R. at 451 n. 4; *Holly's,* 172 B.R. at 564; *Bancroft Cap,* 182 B.R. at 540.

Finally, the creditors who have post-confirmation objections filed against their claims may still resist such objections on estoppel grounds. In *Varat,* the court recognized that under appropriate circumstances equitable estoppel may be used in the bankruptcy setting to prevent post-confirmation objections to claims. "The doctrine of equitable estoppel allows 'a person's act, conduct or silence when it is his duty to speak,' to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action." *Varat,* 81 F.3d at 1317. It, therefore, is unnecessary to require debtors to specifically reserve their rights to sue or object in order to protect against situations involving misleading or inequitable conduct on the part of the debtor. If the facts are such that debtor's failure to disclose a claim against a creditor or an objection to a creditor's claim misleads and damages the creditor, such creditor may invoke the theory of equitable estoppel.

In summary, the cases uniformly recognize that a debtor may reserve the right to object to claims by means of an appropriate provision in the plan. The Code, the better-reasoned case law, and equitable considerations support giving effect to a plan provision containing a general reservation of the right to object to claims following confirmation. Since the plan in the present case contains such a provision, the Debtors will be allowed to assert their objection to Harvell's claim, such objection having been filed within

854

the time period established in the plan for filing objections to claims. The court therefore will consider the merits of the Debtors' objection to the Harvell's claim.

## FACTS

The Harvell's proof of claim is in the amount of $10,337.43 and has attached to it a single invoice which is dated January 31, 1994 and is in the amount of $17,060.97. The invoice does not contain an itemization of the charges for the items described in the invoice with the result that the invoice does not reflect how Harvell's arrived at the total amount due of $17,060.97. The invoice does contain a hand-written notation indicating that $1,723.54 was paid in May of 1994 and $5,000.00 was paid in February of 1995, leaving a balance of $10,337.43 which is the amount of the proof of claim. In an addendum to the proof of claim which Harvell's attached its motion for reconsideration, additional information is supplied concerning the proof of claim. According to the addendum filed by Harvell's, the invoice attached to its proof of claim is for $16,095.25 plus tax of $965.72 for a total of $17,060.97. The addendum then describes the items which are included in the $16,095.25 figure as being an invoice from Nichols Home Repair of $1,444.20 "plus 25% markup", an invoice from Stylecraft Finishing Company in the amount of $11,000.00 "plus 25% markup" and $540.00 for four glass doors manufactured by Harvell's. Additional facts are contained in the following section of this memorandum opinion.

## ANALYSIS

The burden of proof with respect to claims filed under 11 U.S.C. § 502 rests initially, and ultimately, with the claimant who "must allege facts sufficient to support their claim." If the averments in the filed claim meet this standard of sufficiency, it is " 'prima facie' valid." *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992) (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991)). "[A] claim that alleges facts

sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." *Id.* If the claimant satisfies this initial burden, "[t]he burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *Id.* In order to satisfy this burden, "the objector must produce evidence equal in force to the *prima facie* case ... which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* at 173–74. If the objecting party produces such evidence, the burden of going forward reverts to the claimant to prove the validity of its claim by a preponderance of the evidence. *Id.* at 174.

In the present case, the court finds that the proof of claim and addendum filed by Harvell's, read together, set forth facts sufficient to support a legal liability on the part of the Debtors to Harvell's. Therefore, the court concludes that Harvell's has satisfied its initial burden of going forward and that its claim should be treated as *prima facie* valid. The burden then was upon the Debtors to go forward and produce evidence which, if believed, would refute at least one of the allegations that is essential to the legal sufficiency of the claim asserted on behalf of Harvell's. The Debtors carried such burden in the present case. In that regard, the Debtors offered evidence that in 1992, Harvell's became the general contractor for improvements which were to be made to the Debtors' residence. There was no written contract between the parties. Instead, the arrangement was one under which Harvell's verbally agreed to supply the work and materials requested by the Debtors at cost plus 20%. Thereafter, for more than two years, the Debtors specified the improvements to be made and such improvements were performed by Harvell's as general contractor. The improvements included custom cabinets, windows, doors and woodworking supplied by Harvell's as well as installation and other construction services which were rendered by various subcontractors selected by Harvell's. As the project proceeded, Harvell's

submitted periodic invoices or progress billings which initially were paid by the Debtors without objection. However, in approximately April of 1993, the male Debtor expressed dissatisfaction with the lack of itemization or detail in the invoices from Harvell's and requested that Harvell's supply an itemization or breakdown with respect to the cost of the various items and services included in the invoices which were being submitted. Harvell's did not refuse to supply such information. Instead, Harvell's indicated that the requested information would be forthcoming. However, despite continuing requests from the Debtors, the Debtors were unable to obtain itemizations from which they could determine the cost of the various items included in the invoices which they were receiving from Harvell's. A pattern developed at that time and continued until the end of the project in which the Debtors would request more information, Harvell's would indicate that such information would be supplied, the Debtors would make additional payments, but the information was not forthcoming. As a result of not having received the type of information which would enable the Debtors to determine whether they were being charged cost plus 20% for the improvements, the Debtors declined to pay the balance of $10,377.43 which remained unpaid after applying the payments made by the Debtors to the total amount which was billed by Harvell's.

The Debtors offered into evidence all of the invoices which they received from Harvell's which reflected that, in fact, Harvell's never did supply an itemization or breakdown with respect to the labor and materials covered by the invoices which was sufficient to enable the Debtors to determine how the amounts of the various invoices were computed. Further, even though the Debtors testified that the agreement with Harvell's was that Harvell's would charge cost plus 20%, the addendum to the proof of claim and the evidence offered by Harvell's showed that Harvell's, in fact, was charging cost plus 25% for the materials and service which it procured for the job and that the price charged

for the cabinets manufactured by Harvell's was Harvell's cost of materials and labor plus a 43% gross margin. Harvell's evidence thus established that Harvell's charged the Debtors in excess of the cost plus 20% formula which was agreed to by the parties. The Debtors also offered into evidence a list of the payments made to Harvell's during the course of the project at their home which showed that the payments which they had made to Harvell's totaled $241,612.87. The Debtors offered testimony from one of the subcontractors who worked on the project who testified that the sum of $241,612.87 in his opinion was considerably greater than the cost of the work performed at the Debtors' residence plus 20%.

The evidence as a whole established that the amounts billed by Harvell's exceeded the amount provided for in the agreement and that the Debtors had paid the sum of $241,612.87 in response to the overstated Harvell's invoices, leaving an unpaid balance of only $10,337.43. The evidence failed to show that the Debtors owed any portion of the unpaid $10,337.43 under the formula provided for in the agreement, i.e., cost plus 20%. It follows that Harvell's is entitled to no further recovery from the Debtors since the burden of proof was upon Harvell's to show by the greater weight of the evidence that the Debtors remained indebted to Harvell's under the terms of the contract between the parties despite having already paid the sum of $241,612.87 to Harvell's. This burden of proof was not satisfied by Harvell's.

■ The court also has considered whether the Debtors should be precluded from disputing that they owe the unpaid balance claimed by Harvell's based upon the Debtors having made payments to Harvell's as the various invoices and progress billings were being submitted. The court has concluded that such payments do not prevent the Debtors from disputing the unpaid balance. At no time prior to the completion of the work by Harvell's did the Debtors agree that the invoices and progress billings submitted by Harvell's were correct. Rather,

starting in April of 1993, the Debtors made it clear to Harvell's that they were not willing to accept the invoices and progress billings as correct without backup itemizations reflecting how the amounts of the invoices were determined. The Debtors made payments on the invoices and progress billings after being assured that the requested information would be furnished so that Debtors could determine for themselves that they were paying in accordance with the agreement with Harvell's, i.e., cost plus 20%. Debtors continued to make known to Harvell's that they were not satisfied with the progress billings and were not willing to pay any more than the cost plus 20% agreed to by the parties. Under the facts of this case no waiver occurred on the part of the Debtors nor did the Debtors mislead Harvell's regarding their intention to verify the correct amount due before making final payment. Further, since the Debtors never agreed expressly or impliedly to the correctness of the periodic billings no account stated occurred which would bind the Debtors to the period billings which were submitted by Harvell's.

## CONCLUSION

For the foregoing reasons, an order will be entered contemporaneously with this memorandum opinion sustaining the Debtors' objection to the Harvell's claim.