**In re BLEU ROOM EXPERIENCE, INC., Debtor.**

**No. 02–43297.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Feb. 3, 2004.

Christopher Lievois, Bingham Farms, MI, for Debtor.

*OPINION DENYING DANOU GAPPY GROUP INC.'S RESPONSE (ON RES JUDICATA GROUNDS) TO DEBTOR'S FIRST OMNIBUS OBJECTIONS TO PROOFS OF CLAIM*

MARCI BETH MCIVOR, Bankruptcy Judge.

This matter came before the Court at a hearing on January 27, 2004. As explained below, because Debtor reserved its right to object to claims and because Danou Gappy Group Inc. had actual notice that the amount of its claim was disputed, Danou Gappy's Response (on res judicata

grounds) to Debtor's First Omnibus Objections to Proofs of Claim is DENIED.

# I

## FACTUAL BACKGROUND

Debtor filed its Chapter 11 petition on February 11, 2002. At the time of filing, the Debtor's assets were held by a receiver appointed by the Wayne County Circuit Court. The state court had appointed the receiver as part of a legal action brought by Eric Seiger, a creditor of the Debtor. Prior to the bankruptcy filing, Danou Gappy Group (DGG) purchased Eric Seiger's claim against the Debtor. Upon filing the bankruptcy, the Debtor successfully obtained the turnover of its assets from the state court appointed receiver, and the Debtor reopened its nightclub.

On June 17, 2002, DGG filed a secured claim in the bankruptcy proceeding, alleging a claim of $600,000, plus interest and costs, and "subject to creditor's need for discovery." The Debtor subsequently filed an adversary proceeding against DGG challenging the secured status of DGG's claim. On October 21, 2002, the Debtor filed an amended Schedule D, Creditors Holding Secured Claims, which scheduled its debt to DGG as a disputed unsecured debt. On November 5, 2002, the bankruptcy court granted the Debtor's motion for summary judgment, finding that DGG's claim was in fact unsecured.[1]

On November 19, 2003, the Court held a confirmation hearing on the Debtor's First Amended Plan of Reorganization. DGG voted against the Plan, and after a lengthy evidentiary hearing, the Court confirmed the Plan pursuant to 11 U.S.C. § 1129(b)(2)(B)(ii). Debtor's Plan provides for unsecured creditors (including DGG) to receive a pro rata share of a $250,000 dividend over 5 years, plus the unsecured creditors will retain an interest equal to their unpaid principal, which will be paid in full upon the sale of the business.

Debtor's First Amended Disclosure Statement generally reserved the right to object to claims as follows:

> Debtor has not completed its review of Proof of Claim, however, and therefore reserves the right to object to any Proofs of Claims filed pursuant to Article XV of the Plan.

Article XV of the Plan provided that the Bankruptcy Court shall retain jurisdiction to determine all objections to the allowance of Claims. Article XVII of the Plan also provided that Debtor shall not be obligated to make any payments toward any Contested Claim.

> Notwithstanding anything in this Plan to the contrary, *neither the Debtor nor the Reorganized Debtor shall be obligated to make any payments towards any Contested Claim.* Further, neither the Debtor or the Reorganized Debtor shall be required to make any payments for an Allowed Claim to any Creditor if the Debtor or the Reorganized Debtor have filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance of such Allowed Claim in accordance with § 502(d) of the Code.

Plan, Art. XVII, D (emphasis added). The Plan defines a "Contested Claim" as any claim as to which Debtor has interposed an objection and the objection has not been

---

1. DGG has filed a state court suit against Eric Seiger regarding Seiger's sale of this unse- cured claim to DGG.

determined by a final court order. Plan Art. I, 1.14.

On Dec. 22, 2003, the Debtor filed its "First Omnibus Objections to Proofs of Claim." The Omnibus Objection includes an objection to DGG's claim. The objection states, "Debtor further objects to the Danou claim as Danou did not attach any supporting documents to its claim, and has been unable to provide any documentation to support the alleged loans that are the basis of the claim." The Debtor's objection further alleges that it only owes DGG $396,350 (less amounts paid by third party sources), not the $600,000 plus interest and costs that DGG seeks. DGG responded to the Objection and argues that Debtor is barred by res judicata from objecting to DGG's claim.

At a hearing on January 27, 2004, the Court heard oral argument, and ruled from the bench, finding that the doctrine of res judicata does not bar the Debtor's objection to DGG's claim. The Court scheduled the Debtor's Objection to DGG's Claim regarding the dollar amount of the claim for an evidentiary hearing on April 28, 2004 at 9:00 a.m. This Opinion supplements the bench opinion rendered on January 27, 2004.

## II

### *JURISDICTION*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(b) (allowance or disallowance of claims against the estate).

**2.** 11 U.S.C. § 1123(b)(3)(B) states:
 (b) Subject to subsection (a) of this section, a plan may—
 (3) provide for—
 \* \* \* \* \* \*
 (B) the retention and enforcement by the debtor, by the trustee, or by a representa-

## III

### *ANALYSIS*

"Pursuant to 11 U.S.C. § 1141(a), the effect of plan confirmation is to bind all parties to the terms of a plan of reorganization." *Official Committee of Unsecured Creditors v. Qwest Communication Corp. (In re A.P. Liquidating Co.)*, 283 B.R. 456, 459 (Bankr.E.D.Mich.2002) *(citing Still v. Rossville (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir.1991)) "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Id.* The four elements of res judicata are:

(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*In re Crowley, Milner and Co.*, 299 B.R. 830, 844 (Bankr.E.D.Mich.2003).

If a debtor expressly reserves a cause of action in the plan, that cause of action is excepted from the operation of res judicata. *Id.* at 846–52. The failure of a plan to provide for the retention and enforcement of claims by a debtor under § 1123(b)[2] results in the loss of the claim. *Harstad v. First American Bank*, 39 F.3d

tive of the estate appointed for such purpose, of any such claim or interest.

898, 902–03 (8th Cir.1994). However, courts are divided on just how specific the reservation of rights must be under § 1123(b)(3)(B). *Cohen v. TIC Financial Systems (In re Ampace Corp.)*, 279 B.R. 145, 157 (Bankr.D.Del.2002).

 This Court holds that in the context of objections to claims, specifically objections to the dollar amount of a claim, the requirements of 11 U.S.C. § 1123(b)(3)(B) are satisfied so long as the Debtor's Plan of Reorganization reserves the right to object to claims. The Bankruptcy Code requires less specificity in a reservation of rights clause relating to objections to claims than may be required to preserve other affirmative causes of action against creditors.[3]

### 1. Notice

 The primary reason for holding that a general reservation of rights clause is sufficient to preserve the Debtor's right to object to the dollar amount of claims[4] is that 11 U.S.C. § 1123(b)(3)(B) is fundamentally a notice provision. *Harstad*, 39 F.3d at 903 ("We view § 1123(b)(3) as, at least in part, a notice provision. Creditors have the right to know of any potential causes of action that might enlarge the estate—and that could be used to increase

payment to the creditors. Creditors must be notified of potential avoidance actions because it may affect whether or not they choose even to file a claim."); *In re Mickey's Enterprises, Inc.*, 165 B.R. 188, 193 (Bank.W.D.Tex.1994) (res judicata and equitable estoppel barred debtor's preference claim because defendant decided not to file any claims since no claims against it were disclosed by debtor). While few courts explicitly state lack of notice as the rationale for their decision, many courts invoke 11 U.S.C. § 1123(b)(3) when the facts suggest that the defendant in a post confirmation cause of action has been "blind sided" by the debtor's failure to be sufficiently specific in its reservation of rights clause. *See, e.g., Mickey's*, 165 B.R. at 194 ("Debtor lay behind the proverbial log until this creditor's remedies were exhausted and then, and only then, did it come forward with its claim.") *See also* discussion of *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002), *In re Crowley*, 299 B.R. 830 (Bankr. E.D.Mich.2003), and *In re Kelley*, 199 B.R. 698 (9th Cir. BAP 1996) below.

 The claims process is not subject to the notice problems that potentially arise in the context of avoidance actions, or other affirmative actions brought by the Debtor against a creditor. A creditor files

3. It should be noted that some courts require specific reservations of rights when it comes to preserving legal malpractice actions and breach of fiduciary duty actions. *See, Crowley*, 299 B.R. 830 (fiduciary duty action) and *Browning v. Levy*, 283 F.3d 761 (6th Cir.2002)(legal malpractice action). Courts are split over whether specific reservations of rights are required for pursuing post-confirmation preference actions. Central to the decisions in the preference cases is the fact that the creditors knew or should have known whether they received a payment from the debtor within the preference period. "Preferential transfers are easily identified transactions, within a definite time frame, with easily identified potential defendants." *Crowley*, 299 B.R. at 852 (discussing *Peltz v. Worldnet*

*Corp. (In re USN Communications, Inc.)*, 280 B.R. 573 (Bankr.D.Del.2002) and *Cohen v. TIC Financial Systems (In re Ampace Corp.)*, 279 B.R. 145 (Bankr.D.Del.2002)).

4. While objections to the dollar amount of an unsecured claim are often left to the post confirmation period in Chapter 11 proceedings, debtors and creditors usually seek resolution of debtor's objection to the classification of a claim as secured, priority, or unsecured preconfirmation. Earlier resolution is sought because the classification of claims is often critical to the feasibility of the debtor's plan under 11 U.S.C. § 1129(a)(11).

its claim pursuant to 11 U.S.C. § 501. Section 502(a) further provides that a when a proof of claim is filed, the claim is deemed allowed unless an objection is filed:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).[5] Once a creditor submits to the jurisdiction of the bankruptcy court by filing a claim, the creditor is on notice that the debtor has an absolute right to object to the claim.

 Claims and interests filed in Chapter 11 cases are governed specifically by 11 U.S.C. § 1111(a).[6] This section provides that a holder of a claim does not need to file a proof of claim if the claim is scheduled and it is not listed as disputed, contingent, or unliquidated; the claim is deemed filed. Thus, where a claim or interest *is* scheduled as disputed, contingent, or unliquidated it is *not* deemed to be a filed claim. Since a disputed claim is not deemed allowed under § 502(a), or even filed under § 1111(a), the creditor holding a disputed claim is on notice that some litigation will be necessary to resolve the claim.

 So long as the debtor's plan reserves the right to object to claims, creditors have sufficient notice that the amount of their claim may be in dispute. A creditor has the right to vote against the plan if it dislikes the treatment of its claim. Moreover, any adverse impact on the creditor as a result of the fact that its claim potentially remains unliquidated at the time of confirmation, is outweighed by the substantial disservice to all creditors, due to the delay that would result if every claim objection had to be resolved, or even specified, prior to confirmation. The court in *In re Weidel*, 208 B.R. 848 (Bankr. M.D.N.C.1997) explained the policy favoring the enforcement of general reservation of rights clauses:

> [T]he confirmation process is expedited by allowing a general reservation of rights to serve as notice to creditors that their claims may be challenged. To require otherwise would mean that the debtor would have to expend the effort and time required to evaluate all claims filed in this case before the debtor could start the confirmation process. The debtor would have to examine every aspect of every claim and decide whether to pursue an objection before confirma-

---

**5.** The proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *In re Consolidated Pioneer Mort.*, 178 B.R. 222 (9th Cir. BAP 1995). Once an objection is filed, the objecting party carries the burden of going forward with evidence concerning the validity and amount of the claim. *In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir.1992). If the objector then produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of going forward shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id.; accord Matter of Federated Department Stores, Inc.*, 135 B.R. 950, 958 (Bankr.S.D.Ohio 1992). If the claimant fails to file a written response to

the objection at least 10 days before the hearing on the objection to claim, the court may deem that the creditor consents to the relief requested in the objection, and the court may cancel the hearing. Local Rule 3007–1(c) (E.D.Mich.)

**6.** Section 1111(a) states:

> A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

11 U.S.C. § 1111(a).

tion, reserve the specific right to object after confirmation, or abandon any challenge to the claim. In most chapter 11 cases, this process would be lengthy, would seriously delay the proposal of a plan as well as confirmation, and would eat into the debtor's exclusivity period. However, a general reservation of a right to contest claims puts all parties on notice that a creditor's claim may be challenged. The time between the filing of a case and confirmation will be shortened by giving effect to general reservations of rights. Creditors may vote and object with this provision in mind.

*Weidel,* 208 B.R. at 853.

### 2. No Deadline for Objections to Claims

■ The second reason that the Court finds that a general reservation of the right to object to claims is sufficient to preserve that right post-confirmation, is that neither the Bankruptcy Code nor the Rules provide a bar date or deadline for filing objections to claims. *See, e.g., In re Thompson,* 965 F.2d 1136, 1147 (1st Cir. 1992) (an objection to proof of claim may be filed at any time). While Bankruptcy Code sections 501 and 502 provide for the filing and allowance of claims, and for objecting to those claims, they do not set a deadline for doing so. The Bankruptcy Rule which governs objections to claims, Rule 3007, similarly fails to set a deadline for objections to claims. Rule 3007 provides:

> OBJECTIONS TO CLAIMS: An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule

7001, it becomes an adversary proceeding.

The Code and Rules do not set a bar date for objecting to claims because a debtor cannot always evaluate a claim, or the value of objecting to that claim, until administration of the case has commenced, as it may not be known until late in the administration of the case whether there will be any dividend.

> Rule 3007 sets no time period within which the trustee must object to the allowance of a claim. A cutoff date would be inappropriate, for in many cases it may not be known until late in the administration of the case whether there will be any dividend and, consequently, whether a useful purpose would be served by a trustee making an objection.

4 *Collier on Bankruptcy,* ¶ 502.02[3][e] at 502–17 (Alan N. Resnick, et al., eds., 15th ed.2003).

### 3. Equitable Estoppel

■ There are cases in which the creditor's rights have been so adversely impacted by the debtor's conduct, that justice should prevent the debtor from litigating the claim. In such cases, the creditor may respond to debtor's objection to creditor's claim on the grounds of equitable estoppel. The court in *Weidel* explained the estoppel doctrine as follows:

> [T]he creditors who have post-confirmation objections filed against their claims may still resist such objection on estoppel grounds.... The doctrine of equitable estoppel allows "a person's act, conduct or silence when it is his duty to speak," to preclude him from asserting a right he otherwise would have had against another who relied on that voluntary action.... If the facts are such that debtor's failure to disclose a claim against a creditor or an objection to a

creditor's claim misleads and damages the creditor, such creditor may invoke the theory of equitable estoppel.

*Weidel,* 208 B.R. at 853 (citation and quotations omitted). *See also, Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990) ("The reasons for the general application of estoppel are simple enough—the doctrine prevents a party from benefitting from its own misrepresentations"); *Citation Cycle Co., Inc. v. Yorke,* 693 F.2d 691, 695 (7th Cir.1982) (doctrine of equitable estoppel is particularly appropriate in bankruptcy proceedings). In other words, if a debtor's bad conduct has adversely affected a creditor who acted in reliance, the creditor may raise estoppel as a defense, even if the debtor's plan reserves the right to object to claims.

■ In this case, however, the Debtor's conduct has not adversely affected DGG. Therefore, the doctrine of equitable estoppel does not apply in this case, and the Debtor's general reservation of the right to object to claims is sufficient to protect the Debtor's right to object to DGG's claim post-confirmation.

### 4. *Browning, Crowley, and Kelley Distinguished*

DGG relies on *In re Crowley, Milner and Co.,* 299 B.R. 830, 844 (Bankr. E.D.Mich.2003) and *In re Kelley,* 199 B.R. 698 (9th Cir. BAP 1996) to support its argument that Debtor's general reservation of right to object to claims is insufficient to avoid the bar of res judicata. *Crowley* and *Kelley* are distinguishable from this case.

*Crowley* relies on and follows closely the Sixth Circuit's holding in *Browning v. Levy,* 283 F.3d 761 (6th Cir.2002). The debtor in *Browning* argued that its plan of reorganization reserved the debtor's right to pursue an action against the law firm by providing as follows:

In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

The court found that this general reservation of rights was not sufficient to defeat the application of res judicata to debtor's subsequent malpractice claim against a law firm. *Accord Crowley,* 299 B.R. 830 (general reservation of right to pursue claims was insufficient to avoid res judicata bar to post confirmation action against debtor's former CEO for breach of fiduciary duty).

Neither *Browning* nor *Crowley* involved an objection to a claim. *Browning* involved a post confirmation malpractice action and *Crowley* involved a post confirmation action for breach of fiduciary duty. In both cases, the defendants did not have any notice of the action at the time of plan confirmation. The case at bar involves an objection to claim and DGG knew or should have known that Debtor disputed its claim. The Debtor scheduled its debt to DGG as a disputed unsecured debt. Amended Schedule D, filed October 21, 2002. Previously, in the Debtor's Objection to DGG's Motion to Dismiss, the Debtor expressly stated that DGG had not established an accounting of the total amount alleged to be due. At the hearing on January 27, 2004, counsel for DGG stated that DGG itself does not know the exact value of its claim. Because DGG purchased its claim(s) against the Debtor from a third party (Eric Seiger), DGG indicated that it would have to take discovery from that third party and his lawyers to establish the dollar value of the claim. On these facts, it is impossible to find that the Debtor did not properly reserve its right to object to DGG's claim.

In arguing that res judicata should apply, DGG also relies on *In re Kelley,* 199 B.R. 698 (9th Cir. BAP 1996). In that case, the court held that the debtor's counterclaims against their creditor were barred by res judicata and a general reservation of rights was insufficient to avoid the bar. The *Kelley* court pointed out that the debtors unfairly obtained the creditor's vote in favor of their plan of reorganization by failing to reveal their plan to object post confirmation to the creditor's claim.

The circumstances in this case are quite different. As explained above, Debtor notified DGG that it disputed its claim. Further, Debtor did not hide its objection to DGG's claim in order to obtain DGG's vote in favor of its Plan. In fact, DGG voted against the Plan, and the plan was "crammed down" on DGG pursuant to 11 U.S.C. § 1129(b)(2)(B)(ii). DGG's argument that its interests were adversely affected by the debtor's failure to resolve the dollar value of DGG's claim prior to confirmation is disingenuous in light of the fact that DGG did not consent to the Plan. Unlike *Kelley,* this is not a case where the creditor was prejudiced by the debtor's failure to notify the creditor of debtor's objection to creditor's claim.[7]

■ In sum, res judicata does not bar Debtor's objection to DGG's claim, as Debtor scheduled DGG's claim as disputed and the Plan reserved the right to object to claims.

### IV

#### *CONCLUSION*

Being fully advised in the premises, having read the pleadings, and for the reasons

stated above, DGG's Response (on res judicata grounds) to Debtor's First Omnibus Objections to Proofs of Claim is DENIED. An evidentiary hearing on the Debtor's Objection to the claim of DGG regarding the dollar amount of the claim is scheduled for April 28, 2004, at 9:00 a.m.

---

7. It should also be noted that *Kelley* has limited persuasive value even within the Ninth Circuit. Another Ninth Circuit Bankruptcy Appeals Panel later rejected the exact specificity requirement of *Kelley*. *In re Associated Vintage Group, Inc.,* 283 B.R. 549 (9th Cir. BAP 2002). *Associated Vintage Group* adopted a flexible case-by-case standard for determining how specific a reservation of rights must be to avoid res judicata. *Id.* at 563–64.