**In re CROWLEY, MILNER AND COMPANY, Debtor.**

**In re Steinbach Stores, Inc., Debtor.**

**The Official Committee of Unsecured Creditors of Crowley, Milner and Company and the Official Committee of Unsecured Creditors of Steinbach Stores, Inc., Plaintiffs,**

v.

**Dennis Callahan and John Dallacqua, as officers and/or directors of Crowley, Milner and Company and Steinbach Stores, Inc., Defendants.**

**Bankruptcy Nos. 99–41767, 99–41770. Adversary No. 00–4655.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Oct. 1, 2003.

Marc M. Bakst, Detroit, MI, Sonia U. Chae, Robert J. Diehl, Jr., Detroit, MI, Gary W. Faria, Bloomfield Hills, MI, David K. Faust, Office of the Atty. General/Collections, Detroit, MI, Dennis M. Haley, Grand Blanc, MI, Vicki R. Harding, Detroit, MI, Neil E. Herman, Steven J. Reisman, New York City, John D. Hertzberg, Esq., Bingham Farms, MI, Robert S.

Hertzberg, Donald J. Hutchinson, Peter A. Jackson, Daniel G. Kielczewski, Kay Standridge Kress, Mark T. Nelson, Kevin C. Richard, Jay L. Welford, Richard A. Sundquist, Detroit, MI, Terrance A. Keith, Thomas E. Marshall, Troy, MI, Richardo I. Kilpatrick, Auburn Hills, MI, Paul Magy, Southfield, MI, Jeffrey Meyers, Philadelphia, PA, Kevin M. Newman, Syracuse, NY, Michael I. Zousmer, Bloomfield Hills, MI, Michael H. Traison, Miller, Canfield, Paddock & Stone, Barry A. Steinway, Birmingham, MI, Steve Sowell, Mt. Clemons, MI, for creditors.

Earle I. Erman, Southfield, MI, Judy A. O'Neill, Detroit, MI, Adam C. Rogoff, Weil, Gotshal & Manges, LLP, New York City, for debtor.

Tauras N. Ziedas, Detroit, MI, U.S. Trustee.

### OPINION GRANTING DEFENDANT DENNIS CALLAHAN'S MOTION TO DISMISS

PHILLIP J. SHEFFERLY,
Bankruptcy Judge.

#### I. *Introduction*

This matter comes before the Court upon a motion to dismiss filed by Defendant, Dennis Callahan ("Callahan"). The motion to dismiss is made pursuant to Fed.R.Civ.P. 12(b)(6) and 56 as made applicable to this adversary proceeding by Fed. R. Bankr.P. 7012(b)(6) and 7056. The motion was heard by the Court on September 11, 2003. For the reasons set forth in this opinion, the motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6) is denied and the motion to dismiss made pursuant to Fed.R.Civ.P. 56 is granted.

#### II. *Facts*

On February 4, 1999, the Debtors filed separate voluntary petitions for relief under Chapter 11. Prior to filing the Debtors had operated retail specialty department stores in Michigan under the "Crowleys" trade name and in various northeastern states under the "Steinbach" trade name. The Chapter 11 case file indicates that the Debtors had experienced substantial operating losses that led to the filing of the Chapter 11 cases. The cases were jointly administered. Official unsecured creditors' committees (collectively, "Committees") were formed in each of the cases. On August 18, 1999, the Debtors and the Committees together filed an Amended Joint Plan of Liquidation ("Amended Plan"). On the same day, the Debtors and the Committees together filed an Amended Disclosure Statement relating to Amended Plan ("Amended Disclosure Statement"). On August 18, 1999, the Bankruptcy Court entered its Order (a) Approving the Amended Disclosure Statement, (b) Establishing Procedures for Solicitation and Tabulation of Votes, and (c) Scheduling Hearing on Confirmation of the Amended Joint Plan of Liquidation ("Order Approving Amended Disclosure Statement"). Pursuant to the Order Approving Amended Disclosure Statement, a hearing on confirmation of the Amended Plan was scheduled for October 13, 1999.

The confirmation hearing took place as scheduled on October 13, 1999, and an Order Confirming Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code ("Order Confirming Plan") was entered by the Court that day. In paragraph 12.4 on page 28, the Amended Plan authorized the Committees to pursue any of the Debtors' "claims or causes of action against any person." Paragraph 74 on page 22 of the Order Confirming Plan also authorized the Committees, as one of the "Plan Proponents," to pursue any of the Debtors' "claims or causes of action against any person."

On September 20, 2000, the Committees started this adversary proceeding by filing a two count complaint ("Complaint") against Dennis Callahan and John Dallacqua as defendants. The Complaint sought damages in excess of $25,000,000. Callahan had served as the president, chief executive officer, and chairman of the boards of directors of the Debtors until late 1998. Dallacqua had served as the chief financial officer, vice president of finance, secretary, and treasurer of the Debtors until sometime in 1998. The Complaint alleged that Callahan and Dallacqua had breached their fiduciary duties to the Debtors and their creditors.

Callahan and Dallacqua each filed a pre-answer motion to dismiss the Complaint. Callahan's motion to dismiss ("First Motion to Dismiss") was brought pursuant to Fed.R.Civ.P. 12(b)(6). Callahan asserted that the Complaint failed to state a claim upon which relief can be granted. In his memorandum of law in support of the First Motion to Dismiss, Callahan argued that under applicable Michigan law, there is no fiduciary duty owed by a corporation's officers and directors to the general creditor body of the corporation. A hearing on the First Motion to Dismiss was held on March 29, 2001 before Judge Walter Shapero. On April 2, 2001, Judge Shapero entered an Order Denying Defendants Callahan's and Dallacqua's Motions to Dismiss ("Order Denying First Motion to Dismiss"), finding that "both the Debtors' plan and order confirming the plan expressly authorized the Plaintiff to pursue Debtors' causes of action against Debtors' officers and directors."

After entry of the Order Denying First Motion to Dismiss, Callahan filed his answer and affirmative defenses to the Complaint on May 7, 2001. Dallacqua also filed responsive pleadings to the Complaint. The Court file reflects that there were a number of pleadings then filed by each of the parties to the adversary proceeding and that there were hearings conducted before Judge Shapero and before District Court Judge Paul V. Gadola with respect to a motion to withdraw the reference that was filed by Callahan. As the adversary proceeding continued, one of the pleadings filed was the Committees' Motion to Strike Affirmative Defenses of Defendant Callahan and Defendant Dallacqua ("Motion to Strike"). The Motion to Strike was filed on July 6, 2001 and heard on January 30, 2002 by Judge Shapero. On April 3, 2002, Judge Shapero entered a Memorandum Opinion and Order Granting in Part and Denying in Part the Official Committees of Unsecured Creditors' Motion to Strike Affirmative Defenses of Defendant Callahan and Defendant Dallacqua ("Order Striking Affirmative Defenses"). After the parties exchanged initial disclosures as required by Fed.R.Civ.P. 26(a)(1), the Court conducted an initial scheduling conference on September 13, 2002 and entered on September 17, 2002 its Initial Adversary Proceeding Scheduling Order. The Initial Adversary Proceeding Scheduling Order, among other things, set time tables for conducting discovery, filing dispositive motions, and the scheduling of further proceedings before the Court.

The next hearing conducted by the Court in the adversary proceeding took place on November 15, 2002. That hearing was scheduled to hear Callahan's objections to the Committees' initial disclosures. As the parties discussed their dispute on the record regarding the initial disclosures, they also advised the Court that the Committees would be filing an amended complaint. On December 30, 2002, the Committees did file an amended complaint ("Amended Complaint"). On January 31, 2003, Callahan filed his answer, affirmative defenses, and demand for jury trial with respect

to the Amended Complaint. Callahan's affirmative defenses to the Amended Complaint included certain affirmative defenses not raised in his answer and affirmative defenses to the Complaint. Among the new affirmative defenses was the defense of res judicata, the addition of which is a central issue in the matter now before the Court.

On March 27, 2003, upon stipulation of the parties, Judge Shapero entered an Amended Adversary Proceeding Scheduling Order that extended the dates for discovery, dispositive motions, and other proceedings in this action. Shortly thereafter, the adversary proceeding was reassigned to Judge Phillip J. Shefferly. On March 24, 2003, Callahan filed a motion to amend his affirmative defenses. That motion was heard by Judge Shefferly on May 9, 2003. On June 9, 2003, the Court entered its order granting Callahan leave to amend his affirmative defenses. Callahan then filed amended affirmative defenses on June 11, 2003. His amended affirmative defenses included eight new affirmative defenses that had not been included in the answer and affirmative defenses to the Amended Complaint that Callahan filed on January 30, 2003.

A review of the Court file also reflects that substantial discovery was being undertaken during the several months after the Committees filed the Amended Complaint and Callahan filed his answer and affirmative defenses to the Amended Complaint. That fact is also evidenced by a recitation in a proposed order that was submitted by the parties to the Court for the purpose of extending the existing schedule for discovery, dispositive motions, and other hearings. Upon the stipulation of the parties, on June 19, 2003, the Court signed a Second Amended Adversary Proceeding Scheduling Order ("Second Amended Scheduling Order"). The Sec-

ond Amended Scheduling Order, among other things, extended discovery through November 30, 2003, and extended the date for the filing of dispositive motions through December 31, 2003. The extension of these dates was based upon the following stipulation of the parties, which they drafted and recited in the introductory paragraph in the Second Amended Scheduling Order:

> The parties have diligently pursued discovery in this adversary proceeding. Thousands of pages of documents have been produced. Eight depositions have been completed and three depositions are in process. Numerous (possibly more than twenty) additional depositions are required, many of which must be scheduled out of state. Numerous witnesses are non-parties. Scheduling has also been compromised by the need to coordinate the scheduling of depositions with the calendars of several attorneys and the vacation schedules of attorneys and witnesses. Plaintiffs and Defendants agree that all parties are proceeding with the scheduling and conduct of depositions in good faith and in an as expeditious a manner as the circumstances will permit. Accordingly, the parties stipulate to a further extension of the dates in this Court's Initial Adversary Proceeding Scheduling Order . . . .

As the parties continued to undertake discovery, on June 27, 2003, Callahan filed another motion to dismiss ("Second Motion to Dismiss"). The Second Motion to Dismiss sets forth two basic arguments:

1. The Amended Complaint fails to state a claim and should be dismissed under Fed.R.Civ.P. 12(b)(6) because the Amended Complaint, although alleging breach of fiduciary duty, does not allege any self dealing or enrichment on the part of Callahan. Therefore, Callahan argues

the Amended Complaint does not state a claim upon which relief can be granted.

2. The claims set forth in the Amended Complaint are barred by the doctrine of res judicata and should be dismissed pursuant to Fed.R.Civ.P. 56 because the Order Confirming Plan is a final judgment, which bars relitigation of the claims set forth in the Amended Complaint.

In response to the Rule 12(b)(6) argument, the Committees assert that Callahan's argument that self dealing is an essential element of a breach of fiduciary duty claim under Michigan law was already rejected by Judge Shapero in this case in his Order Denying First Motion to Dismiss. Likewise, the Committees argue that Judge Shapero has already held that the Committees are authorized to pursue the claims set forth in the Amended Complaint. Finally, the Committees state that even if the Court is not bound by the Order Denying First Motion to Dismiss, the Second Motion to Dismiss must still be denied because Michigan law does not require any allegation of self dealing or enrichment as an element of a breach of fiduciary duty claim. Responding to Callahan's alternative argument under Rule 56, the Committees contend that Callahan has waived the defense of res judicata by not raising it in his First Motion to Dismiss. In addition, the Committees argue that even if Callahan may still raise the defense, the doctrine of res judicata is not applicable in this case because the elements are not met and, even if they are met, an exception to res judicata applies here because the right to litigate claims against Callahan was preserved in the bankruptcy case.

III. *Callahan's Rule 12(b)(6) Motion*

■ Callahan argues that the Amended Complaint fails to state a claim and, there-fore, should be dismissed under Rule 12(b)(6). Section (b) of Rule 12 provides in pertinent part that:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

In the Second Motion to Dismiss, Callahan contends that self dealing or enrichment is a requirement for a breach of fiduciary duty claim such as the one presented by the Committees in the Amended Complaint. Callahan cites several cases from other jurisdictions that support this proposition. *See Helm Financial Corp. v. MNVA Railroad, Inc.*, 212 F.3d 1076, 1081–82 (8th Cir.2000); *Bank of America v. Musselman*, 222 F.Supp.2d 792, 799–800 & 800 n. 17 (E.D.Va.2002); *Steinberg v. Kendig*, Nos. 97C7934, 97C6043, 2000 WL 28266 (N.D.Ill., Jan.12, 2000); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1287 (Del.1989); *Guth v. Loft*, 5 A.2d 503 (Del.1939).

A motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the complaint rather than the merits of the claim. *See* 10A Wright, Miller and Kane, *Federal Practice and Procedure: Civil 2d* § 2713 at 221 (West 1998). In determining a motion a dismiss under Fed.R.Civ.P. 12(b)(6), the Court must ac-

cept all factual allegations as true and construe all inferences from those allegations "in a light most favorable for the plaintiff." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). "However, the [C]ourt need not accept as true a legal conclusion couched as a factual allegation." *Soli–Tech, Inc. v. Halliburton Co.,* No. 91–CV–10232–BC, 1993 WL 315358, at *3 (E.D.Mich., Jan.26, 1993) (citing *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). " '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Mayer,* 988 F.2d at 638 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Before the Court applies the standard of Rule 12(b)(6) to Callahan's Second Motion to Dismiss, the Committees assert as a threshold matter that Callahan is precluded from filing this Rule 12(b)(6) motion because he had already filed the First Motion to Dismiss under Rule 12(b)(6), which was denied by Judge Shapero in his Order Denying First Motion to Dismiss. Callahan contends that the Second Motion to Dismiss under Rule 12(b)(6) is different than the motion heard by Judge Shapero because the Committees have now filed an Amended Complaint and the First Motion to Dismiss filed by Callahan pertained only to the original Complaint. According to Callahan, the Amended Complaint asserts "an entirely different cause of action" than did the Complaint. (Callahan's Reply Br. at 5.) As such, Callahan insists that he is entitled to file another Rule 12(b)(6) motion. Callahan's argument fails for two reasons.

First, a comparison of the Complaint and the Amended Complaint reveals few differences. The Complaint contained 89 separate numbered paragraphs. The Amended Complaint deleted three of those paragraphs: paragraphs 63, 64 and 68. The other 86 paragraphs of the Complaint were repeated verbatim in the Amended Complaint. The three paragraphs that were deleted eliminated three factual allegations, and therefore did not, in this Court's view, render the Amended Complaint "an entirely different cause of action" than the Complaint. Furthermore, this Court does not know of any reason that it should go behind Judge Shapero's Order Denying the First Motion to Dismiss and revisit the elements of the causes of action alleged by the Committees.

Second, a review of Rule 12(b) reflects a strong policy of requiring all of the permitted Rule 12(b) defenses to be raised in a single motion rather than in multiple or successive motions. Section (g) of Rule 12 provides as follows:

**Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

The Sixth Circuit Court of Appeals has explained the operation of this rule in several cases. In *English v. Dyke,* 23 F.3d 1086 (6th Cir.1994), the Court stated that:

"Subdivision (g) contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion. He cannot delay the filing of a responsive pleading by interposing these

defenses and objections in piecemeal fashion but must present them simultaneously."

*Id.* at 1090 (quoting *Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697, 701 (6th Cir.1978)); *see also Mulberry Phosphates, Inc. v. City of Toledo*, No. 96–3231, 1997 WL 539680, at *5 (6th Cir., Aug.29, 1997).

In this case, Callahan's requested relief under Rule 12(b)(6) is based on Callahan's assertion that self dealing or enrichment is a necessary element to the Committees' cause of action. This basis was known by and available to Callahan at the time that Callahan filed the First Motion to Dismiss on December 14, 2000. Both the Complaint and the Amended Complaint state only two causes of action. The first cause of action is titled in both the Complaint and the Amended Complaint as: "Breach of Fiduciary Duty—Common Law". The second cause of action is titled in both the Complaint and the Amended Complaint as: "Breach of Fiduciary Duty—Insolvency". The fact that the Committees eliminated three allegations of fact upon which these two causes of action were based when they filed the Amended Complaint did not change the elements of the causes of action that were alleged. If one or both of those causes of action was lacking a necessary element in the Amended Complaint, then it must of necessity have lacked the identical element in the Complaint. Any motion that could be brought by Callahan for failure of the Amended Complaint to state a claim under Rule 12(b)(6) because of the lack of a necessary element could have and should have been brought by Callahan when he made the First Motion to Dismiss the Complaint. The Court concludes that the portion of the Second Motion to Dismiss that consists of a Rule 12(b)(6) motion is therefore untimely under Fed.R.Civ.P. 12(g). Accordingly, it is denied.

## IV. *Callahan's Rule 56 Motion— Procedural Arguments*

Callahan's Second Motion to Dismiss also seeks relief under Fed.R.Civ.P. 56. Subsection (b) of the rule provides as follows:

**For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

The Committees assert that it is unnecessary for this Court to address the substance of that portion of the Second Motion to Dismiss that is brought under Rule 56 because: (i) it was already considered by Judge Shapero in his Order Denying the First Motion to Dismiss; (ii) even if it were not considered by Judge Shapero in his Order Denying the First Motion to Dismiss, it is no longer timely because it should have been raised by Callahan in the First Motion to Dismiss; and (iii) it is now barred by laches. The Court will address these arguments in sequence.

■ Callahan's requested relief under Rule 56 is based upon application of the doctrine of res judicata. Callahan did not raise res judicata as an affirmative defense to the Complaint. Nor did he raise it in his First Motion to Dismiss. Instead, Callahan first raised this issue in his answer to the Amended Complaint, filed January 31, 2003. Yet, the Committees contend that Judge Shapero in his Order Denying the First Motion to Dismiss, entered April 2, 2001, somehow rejected the application of res judicata principles when he stated that "both the Debtors' plan and order confirming the plan expressly authorized the Plaintiffs to pursue Debtors' causes of action against Debtors' officers and directors." However, a review of the pleadings in support of and in opposition to the

First Motion to Dismiss, as well as the transcript of the hearing on March 29, 2001, does not reflect any discussion of the res judicata effect of the Order Confirming Plan. Instead, what was argued by Callahan in the First Motion to Dismiss, responded to by the Committees, and addressed by Judge Shapero, was the question of *who* had standing to pursue causes of action against third parties on behalf of the Debtors. Nowhere in the transcript of the March 29, 2001 hearing, nor in the pleadings filed by either party for that hearing, is there a discussion of the very different question of *what* causes of action still existed and could be brought on behalf of the Debtors against third parties after the entry of the Order Confirming Plan. The issues raised in the First Motion to Dismiss, the response, and the discussion that took place on the record at the March 29, 2001 hearing, pertained solely to the question of who would have standing to pursue such causes of action, not whether such causes of action remained extant after the Order Confirming Plan was entered. Therefore, the Court concludes that Judge Shapero neither considered nor rejected the application of res judicata principles to the Order Confirming Plan when he entered his Order Denying First Motion to Dismiss. Accordingly, the Order Denying First Motion to Dismiss does not preclude this Court from now considering Callahan's res judicata argument under Rule 56.

■ The Committees next argue that even if the res judicata defense was not rejected by Judge Shapero in his Order Denying First Motion to Dismiss, it should have been raised by Callahan at that time. Callahan's failure to raise the defense in the First Motion to Dismiss, the Committees argue, now precludes him from raising it under Rule 12 or Rule 56. The Committees misapprehend these two rules.

First, unlike motions brought pursuant to Fed.R.Civ.P. 12(b), motions for summary judgment under Fed R. Civ. P. 56(b) can be brought "at any time". Moreover, there is no counterpart in Fed.R.Civ.P. 56 to subsection (g) of Rule 12, which prevents multiple motions under Rule 12(b). Nor is there any counterpart in Rule 56 to subsection (h) of Rule 12, which provides for a waiver of certain of the 12(b) defenses if not made in a timely 12(b) motion. There is no time limit for the filing of Rule 56 motions contained in that rule.

Second, the Court in this adversary proceeding has fixed a schedule for filing dispositive motions under Rule 56. There have been three separate scheduling orders issued by the Court, the last of which is the Second Amended Scheduling Order. That Order provides for a deadline in this case for filing dispositive motions of December 31, 2003. Obviously, that portion of the Second Motion to Dismiss that Callahan has brought under Rule 56 was filed on a timely basis under the Second Amended Scheduling Order.

Third, the proscription on successive motions contained in Rule 12(b) and (g) does not apply to motions for summary judgment under Rule 56. Rule 12(b) enumerates seven separate defenses which may be raised at the option of the pleader by motion prior to the filing of an answer or other pleading. If a defendant chooses to make a motion under that rule raising one of those seven defenses but omitting from such motion any one of those seven defenses that is then available to the party, then subsection (g) of Rule 12 bars that party from later making a motion based on such defense except for those specific instances identified in subsection (h)(2) of Rule 12. If a defendant chooses to make a Rule 12(b) motion pre-answer, then Rule 12(g) requires the defendant to consolidate any of the seven enumerated defenses in a

single motion. The obvious purpose of such consolidation requirement is to prevent multiple pre-answer motions which could have the effect of creating undue delay.

> [Rule 12] is intended to eliminate unnecessary delays at the pleading stage of a case by avoiding the piecemeal consideration of pretrial motions.

> While it was thought to be advisable to allow certain defenses to be raised by a pre-answer motion, the potential abuse of the privilege by successive filings to gain unjust delay was prevented by subdivisions (g) and (h) of Rule 12.

*Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697, 701 (6th Cir.1978) (footnotes and citations omitted).

The *Rauch* court quoted extensively from the Advisory Committee Notes of 1966 to Amended Subdivision (g) in explaining the functioning and policy of Rule 12(g):

> Subdivision (g) has forbidden a defendant who makes a preanswer motion under this rule from making a further motion presenting any defense or objection which was available to him at the time he made the first motion and which he could have included, but did not in fact include therein. Thus if the defendant moves before answer to dismiss the complaint for failure to state a claim, he is barred from making a further motion presenting the defense of improper venue, if that defense was available to him when he made his original motion. Amended subdivision (g) is to the same effect. This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case . . . .

> Amended subdivision (h)(1)(A) . . . states that certain specified defenses which were available to a party when he made a preanswer motion, but which he omitted from the motion, are waived. The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process (see Rule 12(b)(2)-(5)). A party who by motion invites the court to pass upon a threshold defense should bring forward all the specified defenses he then has and thus allow the court to do a reasonably complete job. The waiver reinforces the policy of subdivision (g) forbidding successive motions.

*Id.* at 701 n. 4.

In this case, Callahan brought his Second Motion to Dismiss under Rule 56 based upon the doctrine of res judicata. That is not one of the seven enumerated defenses in Rule 12(b). It is, therefore, not subject to the consolidation requirements of Rule 12(g), nor to the waiver provisions of Rule 12(h).

Res judicata is required to be pled as an affirmative defense under Fed.R.Civ.P. 8(c) as made applicable to adversary proceedings in bankruptcy cases by Bankr.R. 7008.[1] In this case, Callahan did not raise res judicata as an affirmative defense when he filed his affirmative defenses to the Complaint on May 7, 2001. However, Callahan did raise res judicata in the affirmative defenses that he filed in response to the Amended Complaint. The Committees filed the Amended Complaint on December 30, 2002. On January 31, 2003,

---

**1.** Even where a party fails to plead res judicata as an affirmative defense, the U.S. Court of Appeals for the Sixth Circuit has held that a district court may raise res judicata sua sponte and invoke the doctrine to dismiss an action "in the interests of . . . promotion of judicial economy." *Holloway Construction Co, v. United States Department of Labor,* 891 F.2d 1211, 1212 (6th Cir.1989) (citation omitted).

Callahan filed and served his answer and affirmative defenses. Some of the affirmative defenses that he then raised had not previously been raised in his affirmative defenses to the Complaint. Among the new affirmative defenses raised by Callahan was "Affirmative Defense X": "Plaintiffs' claims are barred by application of the doctrine of the *res judicata.*"

Although the Committees state that Callahan's res judicata affirmative defense is somehow untimely, they cite no law in support of that proposition. If the Committees believed the defense to be untimely, the rules provide a mechanism to request that a pleading be stricken. Fed. R.Civ.P. 12(f) permits a party to file a motion to strike within a prescribed time period after receipt of a pleading. It provides as follows:

> **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

As Rule 12(f) by its terms applies to "any insufficient defense", it is properly invoked to strike insufficient affirmative defenses. *See* 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d* § 1381 at 661–62 (West 1990) (citing cases where motions to strike were effectively used to strike insufficient affirmative defenses); *Hall v. American Steamship Co.,* 688 F.2d 1062, 1066 (6th Cir.1982) (affirming the district court's decision to strike an affirmative defense of contributory negligence); *Environ Products, Inc. v. Total Containment, Inc.,* 951 F.Supp. 57, 60 (E.D.Pa.1996) (explaining that "a motion to

strike is the primary means for objection to an insufficient affirmative defense") (citation omitted). "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances." *Ameriwood Industries International Corp. v. Arthur Andersen & Co.,* 961 F.Supp. 1078, 1083 (W.D.Mich.1997) (citing *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir.1953) (explaining that a "motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy")). "[A] motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1498 (S.D.Ohio 1991) (internal quotation marks and citation omitted). In deciding a motion to strike the affirmative defenses in the answer to a complaint, all well pleaded facts in the complaint should be taken as true, but legal or factual conclusions do not have to be accepted. *Id.* at 1497–98 (citation omitted). In spite of the high standard governing motions to strike affirmative defenses, it is appropriate to strike affirmative defenses that are clearly deficient in order to "eliminate spurious issues before trial and streamline the litigation." *Ameriwood Industries,* 961 F.Supp. at 1083 (citation omitted).

In this case, the Committees did not file a motion to strike the affirmative defense of res judicata raised by Callahan in the affirmative defenses that he filed on January 31, 2003 in response to the Amended Complaint. Yet, earlier in the case, the Committees successfully used the Rule 12(f) device. On July 6, 2001, the Committees filed the Motion to Strike the affirmative defenses that initially had been pled by Callahan in response to the Complaint. In the Motion to Strike, which was accom-

panied by a 25 page memorandum replete with citations in support of the use of Rule 12(f) as a means of striking affirmative defenses, the Committees requested the striking of 17 of the affirmative defenses raised by Callahan. On April 3, 2002, the Court entered the Order Striking Affirmative Defenses, which partially granted and partially denied the relief requested. However, despite the Committees' readiness to utilize Rule 12(f) as a means of striking affirmative defenses earlier in the case, they chose not to file a timely motion under Rule 12(f) to strike the affirmative defense of res judicata when it was first raised by Callahan on January 31, 2003 in his affirmative defenses to the Amended Complaint. Without a timely motion to strike on file, the Court now has no basis to disregard the affirmative defense of res judicata, which was timely raised by Callahan in his affirmative defenses to the Amended Complaint. It is neither one of the seven enumerated defenses in Rule 12(b), which were required to have been raised by Callahan in his pre-answer First Motion to Dismiss, nor was it filed on an untimely basis in response to the Amended Complaint, nor has it been made the subject of a timely motion to strike under Rule 12(f). In view of these facts, there is no basis for the Court to now conclude that the assertion of res judicata is untimely.

Moreover, the Committees' propensity to object to affirmative defenses where the Committees believed there was a basis to do so, has manifested itself in this case not only by the Motion to Strike filed on July 6, 2001, but also by the Committees' later opposition to Callahan's motion for leave to file additional affirmative defenses, which he filed with the Court on March 24, 2003. The Committees opposed that motion, which sought to add certain new affirmative defenses. In paragraphs 1 and 2 of their objection, the Committees pointed out that Callahan had already added new affirmative defenses including res judicata, on January 31, 2003, when he answered the Amended Complaint. In fact, at the hearing on May 9, 2003, the Committees acknowledged that Callahan had added new affirmative defenses, but did not object to the January, 2003 defenses. Instead, the Committees only challenged Callahan's attempt to add *more* affirmative defenses to those that he had filed three months earlier. The salient point here is that the Committees have vigorously resisted certain of the original affirmative defenses (in the Motion to Strike filed on July 6, 2001) and certain additional affirmative defenses (sought to be added by Callahan on March 24, 2003) but, for whatever reason, made no motion to strike the res judicata affirmative defense that was pled by Callahan on January 31, 2003 when he timely filed his affirmative defenses to the Amended Complaint.[2]

■ The final reason why the Committees assert that Callahan's Rule 56 motion based on res judicata should not be considered by the Court is the doctrine of laches. "Laches is the negligent and unintentional failure to protect one's rights. A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to

**2.** Although not raised by the Committees, there is case law to support limiting an answer to an amended complaint to new matters raised in the amended complaint. *See, e.g., Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 832 (N.D.Iowa 1997) (concluding "that if an amended complaint does not change the theory or scope of the case, a defendant must seek leave of court pursuant to Rule 15(a) before it can amend its answer"). However, the proper recourse for a plaintiff to challenge new matters raised in an answer is a timely Rule 12(f) motion to strike.

the other party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.,* 270 F.3d 298, 320 (6th Cir.2001) (quotation marks and citations omitted); *see also Ruiz v. Shelby County Sheriff's Dept.,* 725 F.2d 388, 393 (6th Cir.1984) (requiring "unexcused or unreasonable delay [that] has prejudiced [an] adversary"); *Taylor v. S.S. Kresge Co.,* 326 Mich. 580, 40 N.W.2d 636, 640 (1950) ("[L]aches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right.") (quotation marks and citations omitted); *Torakis v. Torakis,* 194 Mich.App. 201, 486 N.W.2d 107, 110 (1992) (requiring "passage of time, prejudice to defendant, and lack of diligence by the plaintiff") (citation omitted).

The Committees have not made a showing of laches in this case. The affirmative defense of res judicata was timely filed in response to the Amended Complaint on January 31, 2003. It had been of record for over six months prior to the filing of Callahan's Rule 56 motion. For the reasons explained above, the raising of the res judicata defense was not untimely under Rule 12(b) or 12(g), nor is a motion based on res judicata untimely under Rule 56, which permits it to be raised at any time. Further, the Second Amended Scheduling Order permits dispositive motions to be filed in this case up until December 31, 2003, so clearly there cannot be a finding of lack of diligence on the part of Callahan by filing the motion in June, 2003. Moreover, this case is not yet scheduled for trial, in large part because of the complexity and extensiveness of the litigation, including the discovery phases of this litigation completed to date. The Second Amended Scheduling Order was entered in June, 2003, one week before the Second Motion to Dismiss was filed. The Second Amended Scheduling Order indicated that this case is a long way from trial and that "possibly more than twenty" additional de-

positions must be taken, many of which are out of state. By the parties' own admission, as contained in the stipulation that they signed as part of the Second Amended Scheduling Order, "all parties are proceeding with the scheduling and conduct of depositions in good faith and in as expeditious a manner as the circumstances will permit." The point here is that, although the case is not ready for trial, the parties agree that the reason is not due to any delay tactics by either party. In view of these facts, the Court is not persuaded either that there has been a lack of diligence on the part of Callahan in asserting the res judicata defense, or that there is any prejudice suffered by the Committees by reason of the fact that it is now being made the basis of a Rule 56 motion. In the final analysis, any alleged prejudice to the Committees could have been avoided if the Committees had filed a timely motion to strike the res judicata affirmative defense when it was first raised, rather than waiting over six months to object, and then only objecting when res judicata was made the subject of a timely Rule 56 motion. In these circumstances, the Court does not find that laches is applicable.

Although it is unfortunate that this issue is just now being joined for decision in this case, it is equally clear to the Court, in view of what has transpired to date and what remains to be done in this case, that there is neither a legal nor an equitable basis to find Callahan's Rule 56 motion untimely. The Court thus concludes that the Rule 56 motion contained in Callahan's Second Motion to Dismiss, based upon application of doctrine of res judicata, is timely and should be considered on the merits by this Court.

### V. *Application of Res Judicata Principles*

Callahan argues that the doctrine of res judicata bars the causes of action set forth

in the Amended Complaint by the Committees. According to Callahan, the Order Confirming Plan constitutes a final judgment that bars the subsequent litigation of matters arising out of the same transactions that could have or should have been litigated in the Chapter 11 reorganization. The Committees contend that res judicata does not have application in this instance because there was an adequate preservation of any causes of action that the Debtors may have had against third parties contained in the Amended Disclosure Statement, Amended Plan and Order Confirming Plan.

■ In applying the doctrine of res judicata to a confirmed chapter 11 plan, the Sixth Circuit explained that,

> [a]s a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir.1992). Such confirmation by a bankruptcy court "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458, 463 (6th Cir.1991).

*Browning v. Levy,* 283 F.3d 761, 772 (6th Cir.2002). The *Browning* court clarified that "[r]es judicata bars not only the actual parties to an earlier bankruptcy proceeding from later bringing suits which should have been brought in the context of the proceeding, but also those in privity with the parties." *Id.* at 772 (citing *Sanders Confectionery Products,* 973 F.2d at 481).

■ The four elements of res judicata are

> "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same

parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."

*Official Committee of Unsecured Creditors v. Qwest Communications Corp. (In re A.P. Liquidating Co.),* 283 B.R. 456, 459 (Bank.E.D.Mich.2002) (quoting *Bittinger v. Tecumseh Products. Co.,* 123 F.3d 877, 880 (6th Cir.1997)).

■ The first element of res judicata is met here. As explained previously, the Order Confirming Plan constitutes a final judgment in bankruptcy proceedings. *Browning,* 283 F.3d at 772; *Sanders Confectionery Products,* 973 F.2d at 480.

The second element is satisfied in this case because the Committees were plan proponents and Callahan was a creditor of and party to the Chapter 11 case. The Committees concede this point. (Committees' Br. in Opp'n at 24.) Because the Committees and Callahan were themselves parties to the bankruptcy proceeding prior to confirmation, this is a "subsequent action between the same parties".

■ To hold that the third requirement is met, the Court must determine whether the issues raised in the Amended Complaint were or could have been litigated in the Chapter 11 case. In their brief in opposition to the Second Motion to Dismiss, the Committees state that "the claims raised in Plaintiffs' Amended Complaint should not have been raised in the bankruptcy proceeding." (*Id.*) However, in *Browning,* the court instructed that before deciding whether the claims "*should* have been brought in the bankruptcy court, we must first consider whether those claims *could* have been brought in that forum." 283 F.3d at 772. The claims at issue in that case consisted of legal malpractice and breach of fiduciary duty

by the former law firm for the debtor. The *Browning* court held that those claims could have been brought in the bankruptcy court as non-core, related claims pursuant to 28 U.S.C. § 157(c)(1) because the outcome of such proceedings could conceivably have had an effect on the estate being administered in the bankruptcy court.

> Stated another way, a claim is "related to" the bankruptcy proceeding if it would have affected the debtor's rights or liabilities.... Under this test, [the debtor]'s claims against [the defendant] are related to the bankruptcy proceeding because, if they had been brought during the proceeding, any recovery received by [the debtor] would have represented an asset, available for distribution to [the debtor]'s creditors and shareholders.

*Id.* at 773 (citing *In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir.1996) (defining "related to" as meaning " 'the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate' ")).

Like the claims in *Browning,* the Committees' claims against Callahan could have been brought during the Chapter 11 bankruptcy case since any recovery received from Callahan would have been available to distribute to creditors under the Amended Plan and thereby would have affected the estate. Moreover, a review of the claims against Callahan makes it readily apparent that the factual basis for such claims arose prior to the commencement of the bankruptcy cases and therefore such claims could have been brought before the Order Confirming Plan was entered. The claims described in the Amended Complaint are based in large part upon allegations that Callahan breached his fiduciary duties as an officer of the Debtors by

failing to properly implement and maintain a reliable inventory accounting system. These allegations all arose out of Callahan's conduct as an officer and employee of the Debtors. Callahan's office and employment with the Debtors terminated prior to the bankruptcy cases in 1998. All of the facts that are alleged in the Amended Complaint and that give rise to the claims against Callahan took place prior to the Chapter 11 case and the Order Confirming Plan. The Amended Disclosure Statement reflects the Debtors' and the Committees' awareness of these facts by attributing the Debtors' poor pre-petition performance and substantial operating losses to, *inter alia,* "poor merchandising and inventory mix in the Debtors' stores, often resulting in 'stale' inventory which must be sold at substantial discounts." (Amended Disclosure Statement ¶ 6.). Also, the Amended Complaint recites in paragraph 12 that

> the causes of action set forth below are inextricably tied to the bankruptcy proceeding affecting the liquidation of the assets. As shown below, the Defendants' breach of fiduciary duty and negligent misrepresentation negatively impacted upon the Debtors' ability to reorganize, and to pay creditors.

All of the claims set forth in the Amended Complaint are related to the Chapter 11 bankruptcy case. As such, all of those claims could have and should have been brought in the bankruptcy cases before the entry of the Order Confirming Plan. Therefore, the third requirement of res judicata is met.

 Finally, the Court finds that the fourth element of res judicata, that there be an identity of claims, is satisfied in this case.

> The final element of res judicata, that there be an identity of claims, is satisfied if "the claims arose out of the same transaction or series of transactions, or

whether the claims arose out of the same core of operative facts."

*A.P. Liquidating,* 283 B.R. at 461 (quoting *Micro–Time Management Systems,* 1993 WL 7524 at *5). In *Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869 (2d Cir.1991), the debtor's pre-petition credit relationship with the defendant banks "eventually soured, and the loan was called early . . . ." *Id.* at 870. The debtor maintained that the defendants' actions forced it into bankruptcy. *Id.* at 875. Almost one year after confirmation, the debtor initiated a lender liability action against the defendants for predatory lending. *Id.* at 872. The court found that the suit was barred by res judicata. In applying the fourth element, the court concluded that the issue of confirmation and the claims for "predatory banking practices[ ] were integrally related." *Id.* at 874 (citation omitted). Specifically, the confirmation hearing "encompassed the entire lender-debtor relationship," including determining the value of the business in light of the "sudden termination of [the debtor]'s working line of credit by [the defendants] . . . ." *Id.* at 874–75. "Therefore the post-lending conduct must have substantially influenced [the debtor]'s efforts to restructure its relationships with its creditors in the bankruptcy proceeding." *Id.* at 875 (internal quotation marks omitted). Further, the debtor's

> very allegation that the banks' tortious conduct negatively influenced their business's health, makes it hard-pressed to explain how the two causes of action—the plan of reorganization and the lender liability claims—did not comprise the same essential matter.

*Id.* (citations omitted).

In the case before the Court, as noted above, the Committees allege that Callahan's breach of his fiduciary duties related to the inventory system contributed to substantial pre-petition operating losses. The Amended Complaint directly connects Callahan's alleged conduct to the Debtors' ability to reorganize, stating the claims "are inextricably tied to the bankruptcy proceeding affecting the liquidation of the assets" and "negatively impacted upon the Debtors' ability to reorganize, and to pay creditors." (Amended Compl. ¶ 12.) Therefore, the Court concludes that the claims in the Amended Complaint arose out of the same transaction or series of transactions, or out of the same core of operative facts and thus the fourth and final element of res judicata is met.

■ However, even where all four elements are met, there is an exception to the general rule regarding the res judicata effects of a confirmed Chapter 11 plan of reorganization. Under 11 U.S.C. § 1123(b)(3)(B), a chapter 11 "plan may . . . provide for . . . the retention and enforcement by the debtor" of "any claim or interest belonging to the debtor or to the estate . . . ." The *Browning* court, as well as courts in other jurisdictions, recognized that the res judicata effects of a confirmation order may be avoided where the plan of reorganization expressly reserves the right to litigate certain claims. *Browning,* 283 F.3d at 774–75; *D & K Properties Crystal Lake v. Mutual Life Insurance Co. of New York,* 112 F.3d 257, 259–60 (7th Cir.1997); *Micro–Time Management Systems, Inc. v. Allard & Fish, P.C. (In re Micro–Time Management Systems, Inc.),* Nos. 91–2260, 91–2261, 1993 WL 7524, at *4 (6th Cir. Jan.12, 1993) (finding res judicata will bar later litigation of any claims "not expressly reserved in the plan or reorganization or the order confirming the plan of reorganization") (citation omitted); *Kelley v. South Bay Bank (In re Kelley),* 199 B.R. 698, 704 (9th Cir. BAP 1996) ("If a confirmed plan expressly reserves the right to litigate a specific cause of action

after confirmation, then res judicata does not apply.") (citing *Sure–Snap Corp. v. Bradford National Bank,* 128 B.R. 885, 888 (D.Vt.1991) and *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Investments, Inc.),* 162 B.R. 426, 433 (Bankr. S.D.N.Y.1993)); *see also In re U.S.N. Communications, Inc.,* 280 B.R. 573, 588 (Bankr.D.Del.2002) (same) (citations omitted); *Cohen v. TIC Financial Systems (In re Ampace Corp.),* 279 B.R. 145, 156 (Bankr.D.Del.2002) (same). However, "courts are divided on how specific the language of retention and enforcement must be under § 1123(b)(3)(B) to adequately reserve a cause of action for adjudication at a later date." *Ampace Corp.,* 279 B.R. at 157 (citation omitted).

■■■ The starting point for this Court to determine whether the right to litigate the claims set forth in the Amended Complaint was effectively reserved in this case is the Amended Plan that was confirmed on October 13, 1999 by the Order Confirming Plan. Article XII, Section 12.4 of the Amended Plan contains the following reservation of rights:

*12.4 Rights of Action.* On and after the Confirmation Date, each Debtor and its Committee will retain and have the exclusive right to enforce any and all present or future rights, claims or causes of action against any person and rights of such Debtor that arose before or after the Commencement Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code. Each Debtor and its Committee may pursue, abandon, settle or release any or all such rights of action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. Each Debtor may, in its discre-

tion (in consultation with its Committee), offset any such claim held against a person against any payment due such person under this Plan; *provided, however,* that any claims of each Debtor arising before the Commencement Date shall first be offset against Claims against such Debtors arising before the Commencement Date.

The language in the Order Confirming Plan that reserves the Committees' right to bring actions on behalf of the Debtors against third parties is contained in paragraph 74 on page 22. It reads as follows:

On and after the Confirmation Date, the Plan Proponents will retain and have the exclusive right to enforce any and all present or future rights, claims or causes of action against any person that arose before or after the Commencement Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code. The Plan Proponents may pursue, abandon, settle or release any or all such rights of action, as it deems appropriate, without the need to obtain any other or further relief from the Bankruptcy Court. Each of the Debtors may, in its discretion (in consultation with its Committee), offset any such claim held against a person against any payment due such person under the Amended Plan; *provided, however,* that any claims of the Debtors arising before the Commencement Date shall first be offset against Claims against the Debtors arising before the Confirmation Date.

In the brief filed by the Committees in response to the Second Motion to Dismiss, and at the hearing held before this Court on that motion, the Committees stressed that there is also a reservation of the right to bring claims against Callahan and oth-

ers contained in the Amended Disclosure Statement. The specific provision that the Committees point to is set forth in Section H, subsection 3, on page 31, which reads as follows:

> **3.** ***Rights of Action.*** On and after the Confirmation Date, each Debtor and its Committee will retain and have the exclusive right to enforce and any and all present or future rights, claims or causes of action against any person and rights of the Debtors that arose before or after the Commencement Date, including, but not limited to, rights, claims (including claims against officers and directors), causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code. Each Debtor and its Committee may pursue, abandon, settle or release any or all such rights of action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court. Each Debtor may, in its discretion (in consultation with its Committee), offset any such claim held against a person against any payment due such person under the Plan; provided, however, that any claims of each Debtor arising before the Commencement Date shall first be offset against Claims against such Debtors arising before the Commencement Date.

At first blush, the reservation of rights set forth in the Amended Disclosure Statement looks very much like the reservation of rights set forth in the Amended Plan and, to a lesser extent, like the reservation of rights set forth in the Order Confirming Plan. However, closer inspection shows that the reservation of rights contained in the Amended Disclosure Statement includes the following parenthetical: "(including claims against officers and directors)". It is this parenthetical that the Committees now rely on as the basis for

the reservation of the right to bring a claim against Callahan.

Oddly enough, the parenthetical contained in the reservation of rights in the Amended Disclosure Statement is not made a part of the reservation of rights in paragraph 12.4 of the Amended Plan or in paragraph 74 of the Order Confirming Plan. Neither of those pleadings contains any reference to officers and directors. To resolve the inconsistency between the reservation of rights contained, on the one hand, in the Amended Disclosure Statement, and the reservation of rights contained, on the other hand, in both the Amended Plan and the Order Confirming Plan, the Court is guided by the express language of the Amended Disclosure Statement itself. In large block letters on page 3 of the Amended Disclosure Statement, the plan proponents addressed the possibility of an inconsistency between the Amended Disclosure Statement and the Amended Plan by the following language:

> PLEASE READ THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN, IN ITS ENTIRETY. A COPY OF THE PLAN IS ANNEXED HERETO AS EXHIBIT "A." THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, FOR THE CONVENIENCE OF CREDITORS AND EQUITY INTEREST HOLDERS, BUT THE PLAN ITSELF QUALIFIES ALL SUCH SUMMARIES. ACCORDINGLY, IF THERE EXISTS ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

Thus, the plan proponents created a mechanism to resolve any inconsistencies by including the above quoted language in the Amended Disclosure Statement. Ac-

cordingly, for the purpose of determining whether the reservation of rights is sufficient to avoid the effect of res judicata of the Order Confirming Plan, the Court will look only to the reservation of rights contained in the Amended Plan and the Order Confirming Plan. Even absent the quoted language above taken from the Amended Disclosure Statement, which expressly resolves any inconsistency between the Amended Disclosure Statement and Amended Plan, logic dictates that the reservation of rights in the Amended Plan and the Order Confirming Plan would trump any inconsistency in the Amended Disclosure Statement and be the operative provision because the Order Confirming Plan is itself the final judgment that creates the res judicata effect.

The efficacy of the reservation of rights in the Amended Plan and Order Confirming Plan can be measured by several cases that have considered the scope of the language necessary in order to effectively make a reservation of rights in a plan of reorganization. In *Browning v. Levy,* the disclosure statement contained the following "omnibus reservation of rights":

> In accordance with section 1123(b) of the Bankruptcy Code, the [Debtor] shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 533 of the Bankruptcy Code.

283 F.3d at 768–69. After extensive discovery, evidence was uncovered that the debtor's former counsel forced the debtor to enter into an adverse pre-petition settlement agreement. *Id.* at 767–68. The debtor sued its former counsel post-confirmation for legal malpractice, alleging that the defendant had fraudulently induced the debtor to accept the settlement agreement, which led to a decline in the value of the debtor's shares and the debtor's eventual financial collapse. *Id.* The defendant moved for summary judgment, arguing that the reservation in the disclosure statement was insufficient to overcome the res judicata effect of the order confirming plan. *Id.* at 774. The Sixth Circuit agreed, finding that "a general reservation of rights does not suffice to avoid res judicata." *Id.* (citing *D & K Properties Crystal Lake v. Mutual Life Insurance Co. of New York,* 112 F.3d 257, 260 (7th Cir.1997)). The court explained that the debtor's

> blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor]'s claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names [the defendant] nor states the factual basis for the reserved claims. We therefore conclude that [the debtor]'s blanket reservation does not defeat the application of res judicata to its claims against [the defendant].

*Id.* at 775.

As quoted above, the reservation in ¶ 74 of the Debtors' Order Confirming Plan is virtually identical to the reservation in the *Browning* case. The Order Confirming Plan reserved the right to pursue "any and all present or future rights, claims or causes of action against any person that arose before or after the Commencement Date, including, but not limited to" specified sections of the Bankruptcy Code. This is indistinguishable from the blanket retention in *Browning* of "any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under" specified sections of the Bankrupt-

cy Code. *Browning*, 283 F.3d at 769. Neither the Amended Plan's nor the Order Confirming Plan's reservation of rights named Callahan or any other individuals. Nor did either describe any specific causes of action nor any factual basis for any claims that might exist against Callahan or any other individuals. Curiously, the Amended Disclosure Statement contained the parenthetical "(including officers and directors)". However, for the reasons explained above, the inclusion of that language in the Amended Disclosure Statement is of no moment.[3]

In reviewing the reservation of rights contained in the Amended Plan and the Order Confirming Plan, the Court also considers it important that none of the Amended Disclosure Statement, Amended Plan or Order Confirming Plan in any provision referred to any possible causes of action against Callahan such as those raised in the Amended Complaint. There is no mention in the liquidation analysis set forth in the Amended Disclosure Statement of any possible claims against Callahan, or what the value of such claims might be in the event of a Chapter 7 liquidation. In fact, in the Amended Disclosure Statement, the only reference to any causes of action against third persons at all, other than the quoted language reserving rights in Section H, paragraph 3, is contained in Section E, paragraph 2 on page 12. That section contains a discussion of "preferential transfers" and indicates that the Debtors and the Committees will be undertaking an investigation and analysis of such claims to determine whether there is any "potential recovery actions which might be brought". However, that section specifically provides that "it cannot be determined at this time how much, if any, of the potentially preferential payments will ultimately be recovered by either of the Debtors." There is no similar discussion of any potential claims against Callahan or any other individuals by name, office, or description of cause of action. Further, in Section E, paragraph 1 of the Amended Disclosure Statement, in the section entitled "Significant Assets", there is no discussion of any specific claims or their possible value but, instead, only a single phrase stating that included among "the only significant assets of the Debtors remaining" are "any potential causes of action". No mention is made of who these causes of action might be brought against, what the nature of the causes of action might be or what their value to the estate might be. Creditors and other parties in interest could not reasonably have been expected to deduce from this passage that there were causes of action against Callahan that would be pursued post-confirmation and that created measurable value for creditors and other parties in interest. *See Harstad v. First American Bank*, 39 F.3d 898, 903 (8th Cir.1994) ("view[ing] § 1123(b)(3) as, at least in part, a notice provision" and finding that "[c]reditors have the right to know of any potential causes of action that might enlarge the estate-and that could be used to increase payment to the creditors"); *Westland Oil Development Corp. v. MCorp Management*

---

3. Even if this parenthetical had been included in the reservation of rights contained in the Amended Plan or Order Confirming Plan, this generic reference to "officers and directors", would not, in this Court's view, comport with the requirements of *Browning* absent a description of specific causes of action with a summary of the factual basis for such actions that would enable creditors and other parties in interest to take such causes of action into account in valuing the Debtors' assets and assessing the Debtors' Amended Plan. Further, the Court rejects the Committees' contention that the liquidating nature of the Amended Plan somehow excuses the *Browning* requirement that claims must be expressly and specifically reserved in order to defeat the application of res judicata to such claims.

*Solutions, Inc.,* 157 B.R. 100, 102–03 (S.D.Tex.1993) (noting that "[d]isclosure is the 'pivotal' concept in chapter 11 reorganization" and "maximizes court efficiency by short-cutting attempts ... to litigate what should have been disposed of ... years ago") (citations omitted).

Not only is § 1123(b)(3) central to other creditors in their evaluation of likely distributions under a chapter 11 plan, it is also important to creditors who may become defendants in a later post-confirmation action by a debtor. In *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698 (9th Cir. BAP 1996), the defendant held a security interest under a financing agreement. *Id.* at 700. After initially voting to reject the proposed chapter 11 plan, the defendant agreed to support the plan and relinquish its security interest in exchange for a higher interest rate on its claim. *Id.* at 701. The disclosure statement identified a possible counterclaim against the defendant, and provided that the defendant's claim would be reduced by any recovery from any counterclaim against the defendant. *Id.* at 701, 704. In addition, the confirmed plan provided that the debtors "reserved the right to initiate an adversary proceeding, within 30 days of plan confirmation, to contest any claim." *Id.* The debtors than filed a post-confirmation objection to the defendant's claim.

The *Kelley* court concluded that the reservation language in the confirmed plan was "little more than a general reservation of rights, which has been held insufficient to prevent the application of res judicata." *Id.* (citation omitted). Moreover, the court was concerned that, after negotiations with the debtors, the defendant changed its vote and decided to support the plan:

Although [the language in the disclosure statement] is a clearer expression of potential causes of action, it does not mention the grounds for these potential claims. One reason for such vague references to counterclaims in the Disclosure Statement may have been that the [debtors] were worried that if [the defendant] knew they were going to object to their claim, [the defendant] would never have voted for their plan.

*Id.* at 704; *see also Westland Oil Development,* 157 B.R. at 103 (finding a debtor intentionally "hid [a claim against a creditor] within the murky language of the general retention clause"). The Court raises this issue not to suggest that the Committees intended to hide anticipated causes of action, but instead to stress the importance of a debtor's duties to disclose and the resulting notice that disclosure affords creditors. *Westland Oil Development,* 157 B.R. at 103 ("The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional.").

The Court concludes that the reservation of rights in this instance is not sufficient to avoid the res judicata effect of the Order Confirming Plan. In so holding, the Court recognizes that other courts have rejected the specificity requirement of *Browning.* For example, in *Peltz v. Worldnet Corp. (In re USN Communications, Inc.),* 280 B.R. 573 (Bankr.D.Del. 2002) and *Cohen v. TIC Financial Systems, (In re Ampace Corp.),* 279 B.R. 145 (Bankr.D.Del.2002) addressed the res judicata effect of an order confirming a chapter 11 plan on post-confirmation preference actions. In dictum, and using identical reasoning, both courts disagreed that a reservation of rights must "specifically reserve[ ] the right to litigate [a] specific claim ...." 280 B.R. at 589–90, 279 B.R. at 158–59. Instead, the courts found "a reservation in a plan of reorganization indicating the *type* or category of claims to be preserved is sufficiently informative to provide creditors with notice

that their claims may be challenged post-confirmation." 280 B.R. at 593, 279 B.R. at 160. In *USN Communications,* the plan identified assets as including avoidance actions under § 547, and specifically reserved the right to pursue such actions. 280 B.R. at 579–80. In *Ampace Corp.,* the plan and disclosure statement reserved all avoidance actions. 279 B.R. at 148–48. In addition, the disclosure statement revealed that an analysis of potential actions was being conducted, with the specific dollar amount indicated for payments made to creditors and insiders within the respective preference periods, and the fact that two preferential transfers had been identified, and naming those creditors. *Id.* at 148–49. Central to both courts' conclusion that the reservation was sufficient in those cases was the fact that "creditors who are the potential targets of a preference action ... know, or should know, whether they received a payment from the debtor within" the preference period. 280 B.R. at 593, 279 B.R. at 161. The courts thus concluded that "a subsequent action is *not* barred by a prior confirmation hearing ... where the disclosure statement and plan contain a *general* reservation of the right to pursue preference actions post-confirmation." 280 B.R. at 594 (citations omitted); 279 B.R. at 161 (citations omitted). Thus, both courts appeared to limit their conclusions to preference actions. Given the language in the plans, and especially in the disclosure statement in *Ampace Corp.,* there was a more compelling basis in those cases to find the general reservation of rights was sufficient. Preferential transfers are easily identified transactions, within a definite time frame, with easily identified potential defendants. As such, those potential claims are distinguishable from actions against officers and directors, and the reasoning from those decisions is not applicable to the case before this Court. Further, this Court is constrained to follow the binding precedent in *Browning* and, even if were not so constrained, the Court rejects the Committees' contention in their brief that the *Browning* "rule is overly broad and mechanistic." (Committees' Br. in Supp. at 25.)

The particular facts of this case, where there is no meaningful information in the Amended Disclosure Statement, Amended Plan, and Order Confirming Plan, regarding the nature, factual basis, or value of any claims, only serve to reinforce the Court's conclusion that the reservation of rights contained in the Amended Plan and the Order Confirming Plan is simply not sufficient under *Browning* to preserve any causes of action against Callahan and avoid the res judicata effect of the Order Confirming Plan. In so ruling, the Court does not desire to set hyper-technical requirements in the drafting of plans and disclosure statements. Rather, the Court's ruling, based on the principles articulated by the Sixth Circuit Court of Appeals in *Browning,* both furthers the policy of complete disclosure, which is the cornerstone of the Bankruptcy Code, and promotes the finality of confirmation orders which thereby increases certainty, discourages multiple litigation, and conserves judicial resources. *Browning,* 283 F.3d at 774–75; *see also In re A.P. Liquidating Co.,* 283 B.R. at 460 (relying on *Browning* in finding language "expressly preserv[ing]" "any and all of the Debtor's Claims" insufficient to overcome res judicata).

Accordingly, for the reasons set forth in this opinion, Callahan's motion to dismiss under Rule 56 based upon application of the principles of res judicata is granted.

The parties shall submit an order consistent with this opinion.